**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| LAVIE CARE CENTERS, LLC, *et al.*, [1] | Case No. 24-55507 (PMB) |
| Debtors. | (Jointly Administered) |

**STATEMENT OF FINANCIAL AFFAIRS FOR**
**CHARLWELL HEALTHCARE, LLC (CASE NO. 24-55708)**

The last four digits of LaVie Care Centers, LLC's federal tax identification number are 5592. There are 282 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/LaVie. The location of LaVie Care Centers, LLC's corporate headquarters and the Debtors' service address is 1040 Crown Pointe Parkway, Suite 600, Atlanta, GA 30338.

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAVIE CARE CENTERS, LLC, *et al.*[1] | ) | Case No. 24-55507 (PMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY,**
**AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS**
**AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**INTRODUCTION**

LaVie Care Centers, LLC ("LaVie") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), are filing their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" or "SOFA" and, collectively, the "Statements" or "SOFAs") with the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These global notes and statement of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to particular Schedules and Statements (the "Specific Notes" and, together with the Global Notes, the "Notes"). These Global Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management team prepared the Schedules and Statements with the assistance of their advisors, consultants, and professionals and have relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors, consultants, and professionals. Given the scale of the Debtors' businesses, the Debtors' management, including

---

[1] The last four digits of LaVie Care Centers, LLC's federal tax identification number are 5592. There are 282 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/LaVie. The location of LaVie Care Centers, LLC's corporate headquarters and the Debtors' service address is 1040 Crown Pointe Parkway, Suite 600, Atlanta, GA 30338.

the Debtors' Chief Restructuring Officer (who has executed the Schedules and Statements of each of the Debtors) has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, the receipt or discovery of subsequent information may result in material changes to the Schedules and Statements, and inadvertent errors, omissions, or inaccuracies may exist in the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of the Debtor or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to the Chapter 11 Cases, including, but not limited to, liability for any claims, any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements except as may be required by applicable law.

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.    **<u>Description of the Chapter 11 Cases</u>**. On June 2, 2024 (the "<u>Petition Date</u>"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On June 3, 2024, the Bankruptcy Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b). *See* Docket No. 20. On June 13, 2024, the Office of the United States Trustee for Region 21 (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102(a)(1) (the "<u>Committee</u>"). *See* Docket No. 112.

2.      **Basis of Presentation**.  For financial reporting purposes, the Debtors historically have prepared consolidated financial statements, which include financial information for the Debtors and certain non-debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP") in the United States, nor are they intended to be fully reconciled with the financial statements of each Debtor.

The Debtors used their best efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the applicable Debtor entity.  However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than reporting by individual legal entity, it is possible that not all assets, liabilities, or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements.  Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the valuation of certain assets and the valuation and nature of certain liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time before or after the Petition Date.  Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or any time prior to or after the Petition Date.

The Schedules and Statements for LaVie Care Centers, LLC (Case No. 24-55507) include amounts related to five non-Debtor entities which were divested by the Debtors between 2016 and 2018.  These entities previously operated in the state of Michigan and the legal entities themselves were sold to a buyer, rather than mere transfer of operations.

The Schedules and Statements for Envoy of Norfolk, LLC (Case No. 24-55622) include amounts for both Thornton Hall and Thornton Hall ALF.  The Schedules and Statements for Locust Grove Facility Operations, LLC (Case No. 24-55602) include amounts for both Locust Grove SNF and Locust Grove ILF.  The Schedules and Statements for Penn Village Facility Operations, LLC (Case No. 55627) include amounts for both Penn Village SNF and Penn Village ILF  The Schedules and Statements for Pavilion at St. Luke Village Facility Operations, LLC (Case No. 24-55623) include amounts for both St. Luke Pavilion SNF and St. Luke Pavilion ILF.  The Schedules and Statements for Envoy of Somerset, LLC (Case No. 24-55633) include amounts for both Siemons SNF and Siemons ALF.  The Schedules and Statements for Harbor Pointe Facility Operations, LLC (Case No. 24-55772) include amounts for both Harbor Pointe ALF and Harbor Pointe ILF.  The Schedules and Statements for Reeders Facility Operations, LLC (Case No. 24-

55710) include amounts for both Reeders SNF and Reeders ILF.  The Schedules and Statements for 741 South Beneva Road Operations LLC (Case No. 24-55550) include amounts for both Beneva Lakes ALF and Beneva Lakes SNF.  The Schedules and Statements for Susquehanna Village Facility Operations, LLC (Case No. 24-55774) include amounts for both Susquehanna SNF and Susquehanna ILF.

3.      **Reporting Date**.  The reported asset values in Schedules A and B, with the exception of estimated cash balances, reflect the Debtors' asset values as of May 31, 2024 (the "Reporting Date").  Estimated cash balances presented in Schedule A reflect bank balances as of the close of business on May 31, 2024.  Liability values presented in Schedules D, E, and F are as of the Petition Date, adjusted for authorized payments under the First Day Orders (as defined below).

4.      **Current Values**.  Other than estimated bank cash balances, and unless otherwise noted, the assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records.

5.      **Confidentiality**.  Schedule E/F includes certain unsecured employee claims against the Debtors including, without limitation, certain claims of former employees as well as certain unsecured claims of current and/or former residents.  Due to confidentiality concerns, and as authorized by certain orders entered by the Bankruptcy Court, the Debtors have removed the addresses of the employee claimants and the names and addresses of the resident claimants listed on Schedule E/F.

6.      **Consolidated Entity Accounts Payable and Disbursement Systems**.  As described in the Cash Management Motion,[2] the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations.  The Debtors concentrate cash assets into a central account to more effectively manage their businesses and coordinate the payment of outstanding obligations.

In the ordinary course of business, the Debtors engage in intercompany transactions (the "Intercompany Transactions") with one another, which result in intercompany receivables and payables (the "Intercompany Claims").  While the majority of Intercompany Transactions are settled by book entry, certain transactions are settled by the actual transfer of cash.  The Debtors track all Intercompany Transactions in their accounting system, which may be traced and accounted for as needed.  Since the Petition Date, the Debtors continue to settle Intercompany Claims in accordance

---

[2]     The "Cash Management Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Existing Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related to the Use Thereof, (C) Maintain Purchasing Card Program and Honor Prepetition Obligations Related Thereto, and (D) Continue to Perform Intercompany Transactions; (II) Extending the Time for The Debtors to Comply with 11 U.S.C. § 345(B) Deposit and Investment Requirements; and (III) Granting Related Relief* [Docket No. 14].

with the procedures outlined in the Cash Management Motion.  Unless otherwise noted, the Debtors have not reported the aggregate net intercompany balances between Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, respectively, due to the voluminous nature of the Debtor-to-Debtor intercompany transactions.  However, the Debtors have reported balances between Debtors and non-Debtor affiliates on these respective schedules.[3]

7.     **Accuracy**.  Although the Debtors have made good faith reasonable efforts to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared.  The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.  The Debtors reserve all rights to amend and/or supplement the Schedules and Statements as is necessary or appropriate.

8.     **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, wherever possible, unless otherwise indicated, net book values are presented as of the Reporting Date.  When necessary, the Debtors have indicated that the value of certain assets is "Undetermined."  Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.

9.     **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars.

10.    **Payment of Prepetition Claims Pursuant to First Day Orders**.  Following the Petition Date, the Bankruptcy Court entered various orders (the "First Day Orders") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition: (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) refund program obligations; (iv) employee wages, salaries, and related items (including, employee benefit programs, staffing agency payments, and independent contractor obligations); and (v) taxes and assessments. Where the Schedules and Statements list creditors and set forth the Debtors'

---

[3]   Any remaining intercompany balances associated with the six non-Debtor affiliates that filed for bankruptcy in 2021 and were jointly administered under *In re CMC II, LLC*, Case No. 21-10461 (JTD) (Bankr. D. Del.) are not included herein because the confirmed chapter 11 plan provided for the dissolution of those entities following claim administration.  *See* Docket No. 718.

scheduled amounts attributable to such claims, such scheduled amounts reflect balances owed as of the Petition Date. To the extent any adjustments are necessary for payments made on account of such claims following the Petition Date pursuant to the First Day Orders, such adjustments have been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement. The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to the First Day Orders that may not be represented in the attached Schedules and Statements.

11.    **Other Paid Claims**. To the extent the Debtors reach any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval if necessary. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

12.    **Setoffs**. The Debtors routinely incur setoffs from payors and suppliers in the ordinary course of business. Such ordinary course setoffs can arise from various items including, but not limited to, billing discrepancies, refund programs, returns, promotional funding, warranties, refunds, certain intercompany transactions, and other disputes between the Debtors and their payors and/or suppliers. These routine setoffs are consistent with ordinary course practice in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Schedules and Statements.

13.    **Accounts Receivable**. The accounts receivable information listed on the Schedules includes receivables from the Debtors' residents and third-party payors and is calculated net of implicit price concessions.

14.    **Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to the Chapter 11 Cases, including, but not limited to, the following:

a.    Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules as to amount, liability, and classification, and to otherwise

6

subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b.      Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items.   The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c.      The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

d.      The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules accordingly.

e.      The listing of a claim on Schedule D as "secured" or on Schedule E/F as "priority unsecured," or the listing a contract or lease on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection, or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in the Final DIP Order[4] or any order by the Bankruptcy Court that is or becomes final, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

f.      In the ordinary course of their business, the Debtors lease property and equipment from certain third-party lessors for use in the daily operation of their business.  Any such leases are set forth on Schedule G, and any current amounts due under such leases that were outstanding as of the Petition Date are listed on Schedule E/F.  Nothing in the Schedules or Statements is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing

---

[4]   The "Final DIP Order" refers to the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 189].

arrangement), and the Debtors reserve all rights with respect to any of such issues, including, the recharacterization thereof.

g.    The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

h.    The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases set forth on the Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

i.    The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and leases listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

j.    The Debtors exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements. However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing. Where such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted. The Debtors have reflected the obligations under the Guarantees for both the primary obligor and the guarantors with respect to their secured financings and debt instruments on Schedule H. Guarantees with respect to the Debtors' executory contracts and unexpired leases are not included on Schedule H and the Debtors believe that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financing, debt instruments, and similar agreements may exist and, to the extent they do, will be identified upon further review. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

k.      Listing a contract or lease on the Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract.  The Debtors hereby expressly reserve the right to assert that any contract listed on the Schedules and Statements does not constitute an executory contract within the meaning of Bankruptcy Code section 365, as well as the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of Bankruptcy Code section 365.

l.      Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

15.     **Totals**.  All totals that are included in the Schedules and Statements are for dollar amounts only and exclude items identified as "Undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.  Where a claim or other amount is marked as "unliquidated," but the Debtors also report a dollar value, such dollar value may indicate only the known or determined amount of such claim or amount, the balance of which is unliquidated.

## **SPECIFIC DISCLOSURES WITH RESPECT TO THE SCHEDULES**

**Schedules A/B**

**Part 1**.  As set forth more fully in the Cash Management Motion, the Company uses an integrated cash management system to pay its financial obligations, centrally control and monitor available cash and record accurate financial data.  The Debtors' cash management system comprises more than 500 bank accounts (the "Bank Accounts"), which are largely concentrated in three main categories: (a) cash collection and concentration accounts relating to the Debtors' businesses; (b) operating accounts; and (c) accounts held on behalf of residents.  Further details with respect to the cash management system are provided in the Cash Management Motion.

Question 2 reflects petty cash held by the Debtors as of the Petition Date and does not include petty cash held by the Debtors on behalf of their residents.

Question 3 includes the CIBC bank account x3828, which contains cash held by the Debtors as required to maintain a letter of credit.  Question 3 does not include Resident Trust Accounts, as

defined in the Cash Management Motion; rather, the Resident Trust Accounts are presented on Part 11, Question 21.

Question 4 includes cash held by the Debtors in the form of the Purchasing Card Program and the Virtual Card Program, as defined in the Cash Management Motion.

**Part 2**.  The Debtors maintain certain deposits in the conduct of their business operations.  These deposits are included in the Schedules for the appropriate legal entity.  Types of deposits include, among other things, lease deposits, utility deposits, and a deposit related to the Debtors' Purchasing Card Program as described in the Cash Management Motion, along with "Other Deposits" as booked on the Debtors' financial statements.  Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records.  The amounts listed in Part 2 do not necessarily reflect assets that the Debtors will be able to collect or realize.  These amounts listed in Part 2 include, among other things, prepaid insurance, prepaid wages, prepaid tax impounds, prepaid leases, prepaid licenses, prepaid taxes, and other prepaid items as booked on the Debtors' financial statements.

**Part 3**.  The Debtors' accounts receivable information includes receivables from the Debtors' residents or third-party payors, which are calculated inclusive of Medicare reserves (including amounts reserved for the Debtors' cost report settlement process, may be owed to such parties in the form of offsets or other adjustments pursuant to the Debtors' refund programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances.

Certain Debtors that do not currently operate facilities reflect total accounts receivable balances that are negative.  These negative account balances relate to amounts owed to Medicaid that do not have offsets in accounts receivable.  The Debtors did not include negative accounts receivable balances in response to Part 3.

The accounts receivable balances in this section exclude intercompany related receivables.  Intercompany related receivables are instead shown in the response to Part 11, Question 77.

**Part 4**.  Other than intercompany ownership, the Debtors do not hold any investments.

**Part 7**.  Question 39 includes chairs, beds, tables, and mattresses.  "Misc. Office Furniture" contains items like file cabinets, drawers, and wardrobes.  Question 40 includes items too large to physically move, including AC units, refrigerators, water heaters, washing machines, and others.  "Misc. Office Fixture" contains items like bulletin boards or display boards.  Question 41 includes anything related to technology equipment, including computers, printers, telephones, etc.

Although the Debtors reflect furniture, fixtures, and equipment in their books and records, any such items within the operating facilities are property of the Debtors' respective landlords.

**Part 8**.  Question 47 includes automobiles and associated accessories (*e.g.*, van doors).  Question 50 includes items that do not fall into the enumerated categories.

**Part 9**.  The Debtors have listed leases and leasehold improvements in response to Part 7.

**Part 10**.  All internet domain names used by the Debtors are owned by non-Debtor Pourlessoins, LLC (d/b/a Synergy Healthcare Services).

**Part 11**.  All insurance policies marked with an asterisk were renewed as of May 31, 2024, and policy numbers for such policies are currently pending.  To the extent that the Debtors have potential contingent or unliquidated claims, those claims are scheduled on P11 Q74.  In general, other assets consist of, but are not limited to, taxes receivable, workers' compensation insurance receivables, GLPL insurance receivable, rebates, amounts due from sellers, and other miscellaneous assets.

**Part 12**.  Unless otherwise noted, the Debtors have not reported the aggregate net intercompany balances between Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, respectively, due to the voluminous nature of the Debtor-to-Debtor intercompany transactions.  However, the Debtors have reported balances between Debtors and non-Debtor affiliates on these respective schedules.[5]

**Schedule D**.  Reference to the applicable loan agreements and related documents or other instrument creating the purported lien is necessary for a complete description of the collateral and the nature, extent, and priority of liens.  Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.  Except as specifically stated on Schedule D, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.

**Schedules E/F**.  The claims listed on Schedules E/F arose and were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, no such dates are included for each claim listed on Schedules E/F.  To the best of the Debtors' knowledge, all claims listed on Schedules E/F arose or were incurred before the Petition Date.

**Part 1**.  Claims owing to various taxing authorities to which the Debtors potentially may be liable, and which the Debtors have received notice of liability from such taxing authorities, are reported on Part 1.  Certain of such claims, however, may be subject to ongoing audits and/or the claims will be satisfied in the ordinary course during the Chapter 11 Cases pursuant to authority granted to the Debtors in the relevant First Day Orders.  Therefore, the Debtors have listed all such claims as "contingent," "unliquidated," and "disputed," pending final resolution of ongoing audits or other outstanding issues.  Inclusion or exclusion of a taxing authority on Part 1 does not mean that such taxing authority has a claim against the Debtors; rather, such taxing authorities are being scheduled out of an abundance of caution, given the numerous jurisdictions and number of Debtors involved in these Chapter 11 Cases.

**Part 2**.  The liabilities listed on Part 2 include all trade payables, litigation claims, unsecured notes, and governmental agency payables.  The trade payable amounts were calculated by taking the sum

---

[5]     Any remaining intercompany balances associated with the six non-Debtor affiliates that filed for bankruptcy in 2021 and were jointly administered under *In re CMC II, LLC*, Case No. 21-10461 (JTD) (Bankr. D. Del.) are not included herein because the confirmed chapter 11 plan provided for the dissolution of those entities following claim administration.  *See* Docket No. 718.

of all invoices per Debtor and per vendor. Litigation amounts were prorated amongst the relevant parties. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed for a complete understanding of the unsecured claims against the Debtors.

The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor. In addition, the Debtors reserve their right to dispute or challenge any priority asserted with respect to any liabilities listed on Schedule E/F. The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, trade creditors, landlords, utility companies, consultants, and other service providers. The Debtors, however, believe that there are instances where creditors have yet to provide proper invoices for prepetition goods or services.

Part 2 contains information regarding pending litigation involving the Debtors. To the extent that litigation involving a particular Debtor has been identified, such information is included on that Debtor's Schedule E/F. Unknown amounts for potential claims are listed as "Undetermined" and marked as contingent, unliquidated, and disputed in the Schedules.

Part 2 does not include certain balances including deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under the First Day Orders. Each Debtor's Schedule E/F will reflect some of such Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during the Chapter 11 Cases pursuant to the First Day Orders and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

**Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements"), the Debtors' review process of the Agreements is ongoing and inadvertent errors, omissions, or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements,

12

amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, and other documents, instruments, and agreements which may not be listed on Schedule G.

Executory contracts for short-term service orders that are oral in nature have not been included in Schedule G.

Any and all of the Debtors' rights, claims, and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G, and (iii) amend or supplement such Schedule as necessary.

Certain of the Agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors. Additionally, the specific Debtor obligor(s) to certain of the Agreements could not be specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtor's Schedule G on which to list the Agreement.

**<u>Schedule H</u>**. The Debtors are party to various debt agreements which were executed by multiple Debtors. The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H. Furthermore, the Debtors may not have identified on Schedule H certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. Due to their voluminous nature, and to avoid unnecessary duplication, the Debtors have not included on Schedule H debts for which more than one Debtor may be liable if such debts were already reflected on Schedule E/F or Schedule G for the respective Debtors subject to such debt. To the extent these Notes include notes specific to Schedules D-G, such Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE STATEMENTS

**Statement 1**.  Gross revenue reflects revenue achieved by each Debtor over the relevant periods and is presented net of implicit price concessions.  Other sources of revenue include meal revenue, vending machine revenue, grant income, and revenue from other non-business sources, including ERC tax credits.  The ERC tax credits were received by LaVie and subsequently transferred to non-Debtor LV Investment, LLC to segregate those funds, then eventually transferred back to LaVie for general working capital purposes as needed.  The Debtors' fiscal year ends on December 31 of each year.  Year-to-date revenue is reported for the period ended May 31, 2024.

**Statement 3**.  As described in the Cash Management Motion, the Debtors utilize their integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations.    The  obligations  of  the  Debtors  are  primarily  paid  by  and  through  LaVie notwithstanding that certain obligations may be obligations of one or more of the Debtors as described in the Cash Management Motion.

The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from March 4, 2024 through June 2, 2024.  The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements.  It is expected, however, that many payments included in Statement 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).

The response to Statement 3 excludes (i) payments made as part of regular and ordinary course individual expense reimbursements and payroll disbursements to employees and (ii) disbursements or transfers listed on Statements 4, 9, and 11.  Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on Statement 11 and are excluded from Statement 3.

The amounts listed in Statement 3 reflect the Debtors' disbursements netted against any check level detail; thus, to the extent a disbursement was made to pay for multiple invoices, only one entry has been listed on Statement 3.

**Statement 4**.  For purposes of the Schedules and Statements, the Debtors define "insiders" as (i) officers, directors, and anyone in control of a corporate Debtor and their relatives; and (ii) affiliates of the Debtors and insiders of such affiliates.[6]  Individuals listed in the Statements as insiders have been included for informational purposes only.  The payroll-related amounts shown

---

[6]    Out of an abundance of caution, the Debtors are listing Pourlessoins, LLC (d/b/a Synergy Healthcare Services), Zombleben, LLC (d/b/a Synergy Healthcare Solutions), NSPRMC, LLC (d/b/a Nspire Healthcare), NSPR Care Centers, LLC, and CPSTN Operations, LLC as "insiders" due to common indirect beneficial ownership with the Debtors.  The Debtors reserve all rights to dispute whether someone identified in response to Statement 4 is in fact an "insider" as defined in Bankruptcy Code section 101(31).

in response to this question for any salary, bonus, or additional compensation are gross amounts that do not include reductions for amounts including employee tax or benefit withholdings. The Debtors also issue corporate-paid credit cards and reimburse direct business expenses incurred by insiders. Such business expenses also are included in Statement 4. Home addresses for directors, employees, and former employees identified as insiders have not been included in the Statements for privacy reasons. Amounts still owed to creditors will appear on the Schedules for each of the Debtors, as applicable.

Pursuant to the Debtors' cash management system, payments made to various parties may be made from a single Debtor on behalf of one or more Debtor entities. The Debtors have only listed each payment on the response to Statement 4 for the Debtor entity that disbursed the payment.

The payments disclosed in Statement 4 are based on payments made by the Debtors with payment dates from June 2, 2023 through June 2, 2024. The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements. It is expected, however, that many payments included in Statement 4 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).

Unless otherwise noted, the Debtors have not reported the aggregate net intercompany balances between Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, respectively, due to the voluminous nature of the Debtor-to-Debtor intercompany transactions. However, the Debtors have reported balances between Debtors and non-Debtor affiliates on these respective schedules. As noted above, the ERC tax credits were received by LaVie and subsequently transferred to non-Debtor LV Investment, LLC to segregate those funds. Such funds were transferred back to LaVie for general working capital purposes as needed.

**Statement 7**. Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum. While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all of their rights to amend or supplement their response to Statement 7.

**Statement 11**. Although the services of any entity who provided a Debtor with consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were provided for the benefit of all the Debtors, the payments for such services were made by LaVie, and are therefore listed on LaVie's response to Statement 11.

Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

**Statement 13**. Within two years of the Petition Date, certain Debtors transferred facility operations to new operators pursuant to various operating transfer agreements. Assets transferred pursuant to these agreements included (i) certain assumed contracts; (ii) certain employee, resident, and other records; (iii) all transferable licenses, permits, and other governmental approvals or authorizations; (iv) all patient care contracts and admission agreements with facility

residents; (v) resident trust funds and deposits; (vi) any know how or intellectual property rights used or held for use in facility operation and all goodwill associated with the transferred facility; (vii) inventory of supplies including personal protective equipment; (viii) phone, fax, other IT, and therapy equipment; and (ix) all transferable third-party warranties and claims for warranties relating to transferred assets.

**Statement 15**.  "Yes" is checked for the currently operating facilities and an estimate of resident as of the Petition Date is provided.  "No" is checked for the other debtor entities which are no longer operating.  Subject to the Debtors' privacy policy, in the ordinary course of business, the Debtors collect certain resident information and retain such information as long as is necessary for the Debtors to comply with business, tax, regulatory, and legal requirements.  Resident records are maintained at each facility and at various off-site storage facilities (listed in response to Statement 20).

**Statement 16**.  An abbreviated list of the types of information collected from each facility was provided for each of the currently operating facilities, while "No" was checked for all other entities.  Subject to the Debtors' privacy policy, in the ordinary course of business, the Debtors collect certain resident information and retain such information as long as is necessary for the Debtors to comply with business, tax, and legal requirements.  Resident records are maintained at each facility and at various off-site storage facilities (listed in response to Statement 20).

**Statement 20**.  In certain cases, several individuals have access to the off-premises storage facilities.  Where applicable, such individuals have been scheduled.

**Statement 21**.  The Debtors maintain and manage Resident Trust Accounts, Resident Trust Petty Cash Accounts, and the Resident Care Cost Accounts (all as defined in the Cash Management Motion) on behalf of their residents in the ordinary course of business and have received authorization to do so under the final cash management order [Docket No. 240].  To the extent that any of the funds described above are held in trust for the benefit of third parties, such funds do not constitute property of the Debtors' estates.  All account balances are as of May 31, 2024.

**Statement 26d**.  The Debtors have provided financial statements in the ordinary course of their businesses to various financial institutions, creditors, landlords, and other parties within two years immediately before the Petition Date, and have used reasonable efforts to list such recipients on Statement 26d.

**Statement 30**.  Any and all known disbursements to "insiders" have been listed in response to Statement 4.

**Statement 31**.  Certain Debtor limited liability companies (each, an "LLC") are disregarded for tax purposes, while other Debtor corporations (and one LLC) are treated as C-Corps for tax purposes.  Income generated by a LLC is consolidated at a higher reporting unit level.

### ***END OF GLOBAL NOTES***

### **SCHEDULES AND STATEMENTS BEGIN ON THE FOLLOWING PAGE**

**Fill in this information to identify the case:**

Debtor Name: In re : Charlwell HealthCare, LLC

United States Bankruptcy Court for the: Northern District Of Georgia

Case number (if known): 24-55708 (PMB)

☐ Check if this is an
amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy   04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

| Part 1: | Income |
|---|---|

**1. Gross revenue from business**

☑ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From _____ MM / DD / YYYY to Filing date | ☐ Operating a business<br>☐ Other _____ | $ _____ |
| **For prior year:** | From _____ MM / DD / YYYY to _____ MM / DD / YYYY | ☐ Operating a business<br>☐ Other _____ | $ _____ |
| **For the year before that:** | From _____ MM / DD / YYYY to _____ MM / DD / YYYY | ☐ Operating a business<br>☐ Other _____ | $ _____ |

---

Debtor: Charlwell HealthCare, LLC                                    Case number *(if known)*:    24-55708
_____
Name

## 2. Non-business revenue

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

|  |  | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From _____ to    Filing date<br>MM / DD / YYYY | _____ | $ _____ |
| **For prior year:** | From _____ to _____<br>MM / DD / YYYY        MM / DD / YYYY | _____ | $ _____ |
| **For the year before that:** | From _____ to _____<br>MM / DD / YYYY        MM / DD / YYYY | _____ | $ _____ |

Debtor:    Charlwell HealthCare, LLC    Case number *(if known):*    24-55708

Name

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

**3.** **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575 . (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.1 | _____<br>Creditor's Name<br><br>_____<br>Street<br><br>_____<br><br>_____<br>City          State          ZIP Code<br><br>_____<br>Country | _____ | $ _____ | ☐  Secured debt<br><br>☐  Unsecured loan repayments<br><br>☐  Suppliers or vendors<br><br>☐  Services<br><br>☐  Other |

**4.** **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| | Insider's Name and Address | Dates | Total amount or value | Reason for payment or transfer |
|---|---|---|---|---|
| 4.1 | _____<br>Insider's Name<br><br>_____<br>Street<br><br>_____<br><br>_____<br>City          State          ZIP Code<br><br>_____<br>Country<br><br>**Relationship to Debtor**<br><br>_____ | _____ | $ _____ | |

Debtor: Charlwell HealthCare, LLC

Name

Case number *(if known)*    24-55708

**5.    Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date | Value of property |
|---|---|---|---|
| 5.1 | | | $ |
| Creditor's Name | | | |
| Street | | | |
| | | | |
| City    State    ZIP Code | | | |
| Country | | | |

**6.    Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1 | | | $ |
| Creditor's Name | | | |
| Street | | | |
| | Last 4 digits of account number: XXXX– | | |
| City    State    ZIP Code | | | |
| Country | | | |

Debtor: Charlwell HealthCare, LLC
_____
Name

Case number *(if known)*    24-55708
_____

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**7.    Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☑ None

|  | **Case title** | **Nature of case** | **Court or agency's name and address** | **Status of case** |
|--|----------------|--------------------|----------------------------------------|--------------------|
| 7.1 | _____ | _____ | Name _____ | ☐ Pending |
|  |  |  |  | ☐ On appeal |
|  |  |  | Street _____ | ☐ Concluded |
|  | **Case number** |  | _____ |  |
|  | _____ |  | City        State        ZIP Code |  |
|  |  |  | Country _____ |  |

**8.    Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

|  | **Custodian's name and address** | **Description of the Property** | **Value** |
|--|-----------------------------------|--------------------------------|-----------|
| 8.1 | Custodian's name _____ | | $ _____ |
|  |  | **Case title** | **Court name and address** |
|  | Street _____ | _____ | Name _____ |
|  |  |  |  |
|  | City     State     ZIP Code | **Case number** | Street _____ |
|  |  | _____ |  |
|  | Country _____ | **Date of order or assignment** | City        State        ZIP Code |
|  |  | _____ | Country _____ |

Debtor: Charlwell HealthCare, LLC
_____
Name

Case number *(if known)*    24-55708
_____

| Part 4: | Certain Gifts and Charitable Contributions |

9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 | | | $ |
| Creditor's Name | | | |
| Street | | | |
| City          State          ZIP Code | | | |
| Country | | | |
| **Recipient's relationship to debtor** | | | |

Debtor:    Charlwell HealthCare, LLC                                          Case number *(if known)*:    24-55708

      Name

---

**Part 5:**    **Certain Losses**

10.    **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | Date of loss | Value of property lost |
|---|---|---|---|
| 10.1 | | | $ |

---

| Debtor: | Charlwell HealthCare, LLC | Case number *(if known)*: | 24-55708 |
| | Name | | |

| Part 6: | Certain Payments or Transfers |
|---|---|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

|  | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1 | | | | $ |
| | **Address** | | | |
| | Street | | | |
| | | | | |
| | City          State          ZIP Code | | | |
| | Country | | | |
| | **Email or website address** | | | |
| | | | | |
| | **Who made the payment, if not debtor?** | | | |
| | | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

|  | Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|---|
| 12.1 | | | | $ |
| | **Trustee** | | | |
| | | | | |

Debtor:  Charlwell HealthCare, LLC                                     Case number *(if known)*:    24-55708
_____
Name

**13. Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1 | _____ | _____ | _____ | $ _____ |

**Address**

_____
Street

_____

_____
City            State          ZIP Code
_____
Country

**Relationship to Debtor**

_____

Debtor: Charlwell HealthCare, LLC _____    Case number *(if known)*    24-55708

Name

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of occupancy |
|---|---|
| 14.1 _____ <br> Street <br><br> _____ <br><br> _____ <br> City          State          ZIP Code <br><br> _____ <br> Country | From _____    To _____ |

Debtor:  Charlwell HealthCare, LLC _____    Case number *(if known)*   24-55708

Name

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
— diagnosing or treating injury, deformity, or disease, or
— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____<br>Facility Name | | |
| _____<br>Street | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | How are records kept? |
| _____<br>City        State        ZIP Code | | Check all that apply:<br>☐  Electronically<br>☐  Paper |
| _____<br>Country | | |

Debtor: Charlwell HealthCare, LLC                                                  Case number *(if known)*    24-55708

Name

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☒ No.

☐ Yes. State the nature of the information collected and retained. _____

      Does the debtor have a privacy policy about that information?

      ☐ No

      ☐ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☒ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

      ☐ No. Go to Part 10.

      ☐ Yes. Fill in below:

| | Name of plan | Employer identification number of the plan |
|---|---|---|
| 17.1 | _____ | EIN: _____ |

      Has the plan been terminated?

      ☐ No

      ☐ Yes

Debtor:  Charlwell HealthCare, LLC _____  Case number *(if known)*    24-55708

Name

---

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

|  | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1 | Name _____ Street _____ _____ City  State  ZIP Code _____ Country | XXXX- ____ | ☐ Checking ☐ Savings ☐ Money market ☐ Brokerage ☐ Other _____ | _____ | $ _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

|  | Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| 19.1 | Name _____ Street _____ _____ City  State  ZIP Code _____ Country | **Address** _____ | _____ | ☐ No  ☐ Yes |

Debtor:    Charlwell HealthCare, LLC                                Case number *(if known)*    24-55708
          Name

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☒ None

|  | Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| 20.1 | Name | | | ☐ No |
| | Street | | | ☐ Yes |
| | | **Address** | | |
| | City    State    ZIP Code | | | |
| | Country | | | |

Debtor: Charlwell HealthCare, LLC

Name

Case number *(if known)*    24-55708

---

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| | Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|---|
| 21.1 | | | | $ |
| | Name | | | |
| | Street | | | |
| | | | | |
| | City        State        ZIP Code | | | |
| | Country | | | |

Debtor: Charlwell HealthCare, LLC

Name

Case number *(if known)*    24-55708

---

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☒ No

☐ Yes. Provide details below.

| | Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|---|
| 22.1 | | Name | | ☐ Pending |
| | | Street | | ☐ On appeal |
| | **Case Number** | | | ☐ Concluded |
| | | City        State        ZIP Code | | |
| | | Country | | |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☒ No

☐ Yes. Provide details below.

| | Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|---|
| 23.1 | Name | Name | | |
| | Street | Street | | |
| | City        State        ZIP Code | City        State        ZIP Code | | |
| | Country | Country | | |

Debtor: Charlwell HealthCare, LLC

Name

Case number *(if known)*:  24-55708

**24.    Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| | Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|---|
| 24.1 | Name | Name | | |
| | Street | Street | | |
| | | | | |
| | City        State        ZIP Code | City        State        ZIP Code | | |
| | Country | Country | | |

Debtor: Charlwell HealthCare, LLC
Name

Case number *(if known):*    24-55708

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.Include this information even if already listed in the Schedules.

☑ None

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1 | _____<br>Name<br><br>_____<br>Street<br><br>_____<br><br>_____<br>City        State        ZIP Code<br><br>_____<br>Country | _____ | EIN: _____<br><br>**Dates business existed**<br>From _____  To _____ |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| | Name and Address | Dates of service | |
|---|---|---|---|
| 26a.1 | Greg Hayes - Chief Financial Officer, Synergy HealthCare Solutions<br>Name<br><br>1040 Crown Pointe Pkwy, Suite 600<br>Street<br><br>_____<br><br>Atlanta        GA        30338<br>City        State        ZIP Code<br><br>_____<br>Country | From    September 2019 | To    Present |
| 26a.2 | Jeremy Pyron - SVP, Corporate Controller, Synergy HealtCare Solutions<br>Name<br><br>1040 Crown Pointe Pkwy, Suite 600<br>Street<br><br>_____<br><br>Atlanta        GA        30338<br>City        State        ZIP Code<br><br>_____<br>Country | From    September 2019 | To    Present |

Debtor: Charlwell HealthCare, LLC

Case number *(if known)*    24-55708

Name

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | | | Dates of service | | | |
|---|---|---|---|---|---|---|
| 26b.1 Cherry Bekaert<br>Name | | | From | 1/1/2019 | To | Present |
| PO BOX 25549<br>Street | | | | | | |
| Richmond<br>City | VA<br>State | 23260-5500<br>ZIP Code | | | | |
| Country | | | | | | |
| 26b.2 Synergy Healthcare Services<br>Name | | | From | 12/1/2021 | To | Present |
| 1040 Crown Pointe Pkwy, Suite 600<br>Street | | | | | | |
| Atlanta<br>City | GA<br>State | 30338<br>ZIP Code | | | | |
| Country | | | | | | |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | | | If any books of account and records are unavailable, explain why |
|---|---|---|---|
| 26c.1 Care.ai<br>Name | | | |
| 7300 Sand Lake Commons Blvd<br>Street | | | |
| Suite 327 | | | |
| Orlando<br>City | FL<br>State | 32819<br>ZIP Code | |
| Country | | | |

| Name and address | | | If any books of account and records are unavailable, explain why |
|---|---|---|---|
| 26c.2 Synergy Healthcare Services<br>Name | | | |
| 1040 Crown Pointe Pkwy<br>Street | | | |
| Suite 600 | | | |
| Atlanta<br>City | GA<br>State | 30338<br>ZIP Code | |
| Country | | | |

Debtor: Charlwell HealthCare, LLC

Name

Case number *(if known)*    24-55708

26d.  List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
| --- |

26d.1

Name

Street

| City | State | ZIP Code |
| --- | --- | --- |

Country

**27.  Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of Inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- |
| | | $ |

| Name and address of the person who has possession of inventory records | | |
| --- | --- | --- |

27.1

Name

Street

| City | State | ZIP Code |
| --- | --- | --- |

Country

**28.  List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and Nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| 28.1  MA HealthCare Holding Company, LLC | 1040 Crown Pointe Pkwy,  Ste 600, Atlanta, GA  30338 | Shareholder | 100% |

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners,   members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No

☐ Yes. Identify below.

| Name | Address | Position and Nature of any interest | Period during which position or interest was held | |
| --- | --- | --- | --- | --- |
| 29.1 | | | From          To |

Debtor: Charlwell HealthCare, LLC                                    Case number *(if known)*:    24-55708

Name

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans,credits on loans, stock redemptions, and options exercised?

☒ No

☐ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1 | | | | |
| | Name | | | |
| | Street | | | |
| | | | | |
| | City          State          ZIP Code | | | |
| | Country | | | |
| | **Relationship to debtor** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☒ Yes. Identify below.

| | Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|---|
| 31.1 | MA Healthcare Holding Company LLC | EIN: 20-5146601 |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☒ No

☐ Yes. Identify below.

| | Name of the pension fund | Employer Identification number of the pension fund |
|---|---|---|
| 32.1 | | EIN: |

**Part 14:**    **Signature and Declaration**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in

connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.

18 U.S.C.§§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     07/16/2024
                MM / DD / YYYY

✖    / s / M. Benjamin Jones                            Printed name   M. Benjamin Jones

      Signature of individual signing on behalf of the debtor

      Position or relationship to debtor   Chief Restructuring Officer

Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* **(Official Form 207) attached?**

☑    No

☐    Yes